**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VICTOR L. YOUNG, SR.,**

                Plaintiff,                      5:04-CV-611
                                                          (GLS/GHL)

        v.

**CITY OF SYRACUSE DEPARTMENT**
**OF PUBLIC WORKS, JEFFREY LOPES,**
**JEFFREY WRIGHT and JOHN WALSH,**

                Defendants.
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**

VICTOR L. YOUNG, SR.
Plaintiff, *Pro Se*
211 Schaffer Avenue
Syracuse, New York 13206

**FOR THE DEFENDANTS:**

CITY OF SYRACUSE                JOSEPH FRANCIS BERGH,
CORPORATION COUNSEL       ESQ.
233 East Washington Street
Room 301, City Hall
Syracuse, New York 13202-1252

**Gary L. Sharpe**
**U.S. District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff *pro se* Young alleges discrimination on the basis of race pursuant to Title VII.  *See Dkt. No. 1; see also* 42 U.S.C. § 2000e, *et seq.*  Currently pending is defendants' motion for summary judgment.  *See Dkt. No. 45.*  To date, Young has failed to file a proper response to the motion. *See Dkt. No. 48.*[1]  For the reasons that follow, defendants' motion is granted.

### **II. Background**[2]

In 1990, Young began working for the City of Syracuse's Department of Public Works (DPW)*.  See Defs. SMF ¶1, Dkt. No. 45.*  As a Laborer II, his duties included street repair and snow and ice removal.  *See id. at ¶2.*  Young was permitted to drive a truck, if trucks were available.  If not, he was assigned to ride with another driver and perform manual work

---

[1]The court notes that there have been numerous delays in this litigation.  Despite an extension of time, Young has failed to properly respond to defendants' motion.  Instead, Young filed a conclusory letter, which fails to articulate his position on defendants' arguments or provide a counter statement of material facts pursuant to N.D.N.Y. R. 7.1(b)(3).  Local Rule 7.1(a)(3) states: "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  N.D.N.Y. R. 7.1(a)(3).  Accordingly, the court deems defendants' statement of facts as admitted.

[2]The following facts have been taken from the defendants' statement of material facts. *See Dkt. No. 45.*

under the supervision of a foreman.  *See id. at ¶¶3-4.*  The system of assigning trucks is based first on availability followed by seniority.  *See id. at ¶¶5-7.*

During his employment, Young had a history of problems with his foreman and had previously been disciplined for insubordination.  *See Defs. SMF ¶¶8-9, Dkt. No. 45.*  As a union member, Young was subject to a progressive discipline system under the collective bargaining unit.  *See id. at ¶¶10-11.*  Violations of work rules, such as fighting and insubordination, fall outside the progressive discipline system and may result in termination.  *See id. at ¶24.*

On August 12 and 17th, 1999, Young found racial slurs written in dirt on his truck.  *See Defs. SMF ¶25, Dkt. No. 45.*  In response, DPW conducted an investigation by questioning employees, taking pictures of the scene, reviewing the security cameras, and filing a police report.  *See id. at ¶26.*  On September 5, 2001, a "Planet of the Apes" movie poster with Young's name on it was hung up at work.  *See id. at ¶32.*  According to Young, this act was done by an African-American foreman in his individual capacity, and DPW did not condone this act.  *See id. at ¶33.*

On December 22, 1999, he was cited for using profanity and abusive

3

language toward another employee.  *See Defs. SMF ¶29, Dkt. No. 45.*
Young received a five day suspension for this infraction.  *See id. at ¶30.* On
November 27, 2002, Young was cited for insubordination, failure to follow
orders, disrespect of a crew leader, and returning late to a job site.  *See id.
at ¶34.*  As a result, Young received a ten day suspension for these
infractions.  *See id. at ¶36.*  He was again cited for insubordination and
disrespect of a crew leader in May 2003, and he was given a five day
suspension.  *See Defs. SMF ¶¶37-38, Dkt. No. 45.*  On September 5, 2003,
Young was involved in a motor vehicle accident with a city truck.  *See id. at
¶42.*  He was found at fault for the accident, and suspended for ten days.
*See id. at ¶43.*[3]  On December 3, 2003, Young was given a written warning
for his failure to follow orders and insubordination for refusing to drive a
truck.  *See id. at ¶48.*  This warning notified Young that it was his last
warning for failing to follow work assignments.  *See id.*

On June 15, 2004, Young was again cited for insubordination and
disrespect to a crew leader.  *See Defs. SMF ¶50, Dkt. No. 45.*  Based on

---

[3]Young filed a grievance with his union for the suspension.  *See Defs. SMF ¶46, Dkt. No. 45.*  DPW settled the grievance by paying for Young to appeal the determination of the Accident Review Committee and, if the appeal was successful, DPW would rescind the suspension.  *See id. at ¶47.*  It is unclear from the record whether the suspension was rescinded.

4

Young's conduct and because he had reached the end of the progressive discipline system, Young was terminated in June 2004.  *See id. at ¶56.*  Subsequently, Young challenged his termination and was eventually reinstated to his former position.  *See id. at ¶58.*  The arbitrator determined that while Young had violated work rules on several occasions, the harsh penalty was not appropriate, and he should have one last chance to keep his job.  *See id. at ¶¶59-60.*  Young eventually returned to his job with full benefits.  *See Defs. SMF ¶62, Dkt. No. 45.*  This action followed.

### III.  Discussion

**A.    Title VII**

Young claims that DPW: (1) terminated him on the basis of race, (2) demoted him in retaliation for filing a complaint with the EEOC, and (3) created a hostile work environment.  In sum, Young has failed to set forth the *prima facie* elements required to show discrimination based on the allegations in his complaint.[4]

To show disparate treatment under Title VII, Young must satisfy the three-part *McDonnell Douglas* test.  *See McDonnell Douglas Corp. v.*

---

[4] Young has not brought forth evidence to satisfy the *prima facie* elements of retaliation under the First Amendment.  Therefore, his retaliation claim is insufficient, and defendants' motion is granted on this ground.

5

*Green*, 411 U.S. 792, 802-804 (1973).  The *McDonnell Douglas* test sets out the order of proof necessary to prove discrimination.  *See id.*  First, Young must establish the existence of a *prima facie* case of discrimination based on race.  *See id.* at 802.  Moreover, to establish a *prima facie* case*,* Young must show (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination.  *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).  Upon the establishment of his *prima facie* case, the burden shifts to DPW "to articulate some legitimate nondiscriminatory reason" for Young's termination or other adverse employment action.  *See McDonnell Douglas Corp.,* 411 U.S. at 802.  After DPW has articulated a nondiscriminatory reason for the employment decision, the burden shifts back to Young to show that the reason provided by the DPW was pretext for discrimination.  *See id.*

Here, Young has failed to establish a *prima facie* case of discrimination, the first prong of the *McDonnell Douglas* test.  Even if Young was successful in establishing a *prima facie* case, DPW has set forth nondiscriminatory reasons for its employment decisions.  Specifically,

6

*inter alia,* Young was repeatedly cited and disciplined for violating work rules. At the time Young was terminated, he had reached the last stage of the progressive discipline system. Therefore, Young's discrimination claims on the basis of disparate treatment fail.

Moreover, Young's claim based on hostile environment must also fail.

> To survive a motion for summary judgment, a plaintiff claiming he or she was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.

*Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and citation omitted). Isolated incidents generally do not rise to the level of a hostile work environment unless they are of such severity to alter the terms and conditions of employment. *See Demoret*, 451 F.3d at 149. Incidents need to be more than episodic and must be sufficiently continuous and concerted to be persuasive. *See id.*

In support of his hostile work environment claim, Young claims that white employees received lesser punishments for the same conduct. However, he offers no evidence to show that the punishments he received

7

were due to his race, instead of his negative work history.  Moreover, Young has failed to show how the random incidents of racial discrimination alleged in the complaint are imputed to DPW.  Specifically, Young has not tied incidents, such as finding slurs written on his truck and the derogatory poster, to his employer.  While these occurrences are shameful, Young makes no casual connection between the acts and DPW.  If anything, the facts suggest that DPW started an investigation to discover and reprimand the responsible parties for the racial slurs.  Therefore, Young has failed to prove discrimination under Title VII, and defendants' motion is granted. Accordingly, Young's complaint is dismissed in its entirety.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that defendants' motion for summary judgment (*Dkt. No. 45*) is **GRANTED**; and it is further

**ORDERED**, that the complaint is **DISMISSED IN ITS ENTIRETY** (*Dkt. No. 1)*, and it is further

**ORDERED** that the Clerk enter judgment in favor of the defendants and close the case; and it is further

**ORDERED**, that the Clerk of the Court provide a copy of this Order to the parties by regular mail.

**IT IS SO ORDERED.**

August 22, 2007
Albany, New York

*[Signature]*
Gary L. Sharpe
U.S. District Judge